IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| LOGAN TAIJERON,<br><br>    Plaintiff,<br><br>v.<br><br>KENNETH ERIK SWANSON, Ph.D., in his official capacity as Superintendent for the Guam Department of Education,<br><br>    Defendant. | Case No. 1:25-cv-00017<br><br>MEMORANDUM DECISION DENYING DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S AMENDED MOTION FOR PRELIMINARY INJUNCTION |

### I.    INTRODUCTION

Plaintiff Logan Taijeron is a public high school student diagnosed with cerebral palsy who requires the use of a wheelchair. (Verif. Compl. 3, ECF No. 1.) Taijeron initiated this disability discrimination action under Section 504 of the Rehabilitation Act, Title II of the Americans with Disabilities Act, and Guam anti-discrimination statutes for declaratory and injunctive relief against the Superintendent of the Guam Department of Education (*id.* at 2); Taijeron seeks an operational elevator so that he can access the second floor of his high school– Southern High School ("SHS") (*see id.* at 6). From July 28 to 29, 2025, the court held an evidentiary hearing on 1) Defendant Kenneth Erik Swanson's motion to dismiss Taijeron's complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (MTD, ECF No. 15) and 2) Taijeron's amended motion for a preliminary injunction (Am. PI Mot., ECF No. 21). (ECF Nos. 30–31.) After reviewing the filings, considering the legal authorities, evaluating the witness' testimony and admitted evidence, and hearing oral argument, the court DENIED both Swanson's motion to dismiss and Taijeron's amended motion for a preliminary injunction. The court now issues this decision to memorialize its reasoning.

## II. DEFENDANT'S MOTION TO DISMISS

On May 12, 2025, Swanson moved to dismiss Taijeron's complaint on two grounds. First, Swanson argued that dismissal was warranted under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)") for failure to state a claim, based on Taijeron's failure to exhaust administrative remedies available under the Individuals with Disabilities Education Act ("IDEA"). (MTD 5–13.) Second, Swanson argued that dismissal was warranted under Fed. R. Civ. P. 12(b)(1) ("Rule 12(b)(1)") for lack of subject matter jurisdiction, based on the mootness of Taijeron's claims in light of the remedial actions undertaken by the Guam Department of Education ("GDOE"). (*Id.* at 2–5.) Taijeron opposed the motion on both grounds (MTD Opp'n, ECF No. 18), to which Swanson replied (MTD Reply, ECF No. 24). The court denied both the Rule 12(b)(6) and 12(b)(1) bases for Swanson's motion to dismiss. (July 29 Mins., ECF No. 31.)

### A. The court denied Swanson's Rule 12(b)(6) motion because the gravamen of Taijeron's complaint does not allege violations of the IDEA.

Although Taijeron's complaint expressly only alleges violations of Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("Section 504"), and Guam anti-discrimination statutes (Verif. Compl. 2), Swanson nonetheless maintained that Taijeron was required to exhaust administrative remedies available under the IDEA before initiating the instant civil action. (MTD 8–10.) In opposition, Taijeron argued that the gravamen of his complaint does not concern the denial of a Free Appropriate Public Education ("FAPE") under the IDEA and thus administrative exhaustion is not required according to the Supreme Court's directive in *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154 (2017). (MTD Opp'n 20–25.) Instead, Taijeron emphasized that he is "seeking declaratory and injunctive relief for the denial of vertical access at SHS in violation of the ADA and Section 504." (*Id.* at 24–25.) In reply, Swanson argued that *Fry*, 580 U.S. 154 is factually distinguishable, and that

Taijeron does indeed seek relief regarding the provision of educational services under the IDEA. (MTD Reply 2–3.)

### 1. Legal Standards

Rule 12(b)(6) allows a defendant to move for dismissal when the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal citation omitted). "In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014). "Otherwise, defendants must produce evidence proving failure to exhaust in order to carry their burden." *Id.*

Exhaustion is required only when a complaint seeks relief under the IDEA for the denial of a FAPE, not when it seeks relief for the denial of equal access to a public institution. *McIntyre v. Eugene Sch. Dist. 4J*, 976 F.3d 902, 916–17 (9th Cir. 2020). Whereas the IDEA's "goal is to provide each child with meaningful access to education by offering individualized instruction and related services appropriate to her unique needs[,] . . . Title II of the ADA and § 504 of the Rehabilitation Act cover people with disabilities of all ages, and do so both inside and outside schools." *Fry*, 580 U.S. at 170 (internal quotations and citations omitted). Title II of the ADA and Section 504 "aim to root out disability-based discrimination, enabling each covered person . . . to participate equally to all others in public facilities and federally funded programs." *Id.* (internal citation omitted). "In short, the IDEA guarantees individually tailored educational

services, while Title II and § 504 promise non-discriminatory access to public institutions," which includes public schools. *Id.* at 170–71.

In *Fry*, the Supreme Court offered the following guidance for discerning whether the "gravamen" of a plaintiff's complaint concerns the denial of a FAPE under the IDEA and thus administrative exhaustion is required:

> One clue to whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination, can come from asking a pair of hypothetical questions. First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those situations there is no FAPE obligation and yet the same basic suit could go forward. But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

*Id.* at 171.

### 2. Analysis

The court denied the Rule 12(b)(6) basis for Swanson's motion to dismiss because it found that the gravamen of Taijeron's complaint concerns the denial of physical access to his high school—a public institution, rather than the denial of a FAPE under the IDEA. Taijeron's complaint makes no reference to the IDEA or GDOE's obligation to provide a FAPE under the IDEA. Instead, the complaint seeks a declaration that Swanson's "actions and inactions violated Section 504 and the ADA" and an order requiring Swanson to "[r]epair or replace the elevator or elevators to ensure it is operational for Plaintiff Logan to access his classes on the second floor of SHS." (Verif. Compl. 6.) Facially, the complaint seeks relief in the form of non-discriminatory access to Taijeron's public high school as guaranteed by Title II of the ADA and

Section 504, rather than individually tailored educational services[1] as guaranteed by the IDEA.

The analysis of the pair of hypothetical questions articulated by the Supreme Court in *Fry* further reinforces the court's conclusion. First, could Taijeron have brought essentially the same claim if the alleged inaccessibility had occurred at a public facility that was not a school? *See Fry*, 580 U.S. at 171. Second, could an adult at SHS have pressed essentially the same grievance? *See id.* The answer to both questions is yes. Taijeron could have filed the same basic complaint if a municipal library or theater had no elevator, *see Kirola v. City & Cnty. of San Francisco*, 860 F.3d 1164, 1171–84 (9th Cir. 2017) (analyzing the merits of mobility-impaired plaintiff's ADA and Section 504 claims alleging access barriers at public libraries); similarly, an employee or visitor at SHS could have brought a substantially identical complaint against the school, *see Hamel v. Bd. of Educ. of Harford Cnty.*, No. CV JKB-16-2876, 2018 WL 1453335, at *10 (D. Md. Mar. 23, 2018) (analyzing merits of former school employee's ADA and Section 504 claims alleging disability discrimination based in part on denial of elevator access). Thus, the court found that the gravamen of Taijeron's complaint concerns equal access on the basis of disability to a public high school under Title II of the ADA and Section 504, not the denial of a FAPE under the IDEA; thus, the court denied Swanson's Rule 12(b)(6) motion to dismiss.

### B. The court denied Swanson's Rule 12(b)(1) motion to dismiss for mootness because the effects of the denial of elevator access have not been completely and irrevocably eradicated.

Swanson moved to dismiss under Rule 12(b)(1) for mootness because GDOE had already provided reasonable accommodations to Taijeron by moving all of his classes and activities to the ground floor, and because GDOE had already "procured the repair of an elevator" at SHS.

---

[1] The testimony of SHS Principal Michael Meno ("Principal Meno") during the evidentiary hearing established that Taijeron is fully integrated in general education classes and is not placed in any special education classes. This evidence further supports the court's finding that Taijeron's complaint does not concern the provision of "specially designed *instruction*" under the IDEA. *See McIntyre*, 976 F.3d at 914.

(MTD 2–5.) Taijeron opposed the motion, arguing that both the ground floor accommodations and status of repairs did not warrant dismissing the complaint. (MTD Opp'n 13–18.) In his reply, Swanson represented that the elevator repair would be completed by June 30, 2025, rendering Taijeron's claims moot. (MTD Reply 6–7; Pangelinan Decl. 2, ECF No. 24-1.)

Prior to the scheduled hearing on Swanson's motion to dismiss, the court held a virtual status conference to gather information about the progress of the elevator repairs. (Status Conf. Mins., ECF No. 28.) At the status conference, the court continued the hearing on the motion to dismiss due to delays in the repair process. (*Id.*) Further, the court granted Taijeron's request to conduct limited discovery so that he could adequately respond to the mootness basis for Swanson's Rule 12(b)(1) motion to dismiss. (Mem. Decision 2–3, ECF No. 29.) During the two-day evidentiary hearing, the parties presented extensive evidence and argument regarding the mootness issue. After considering the testimony of the witnesses, the admitted evidence, the admissible evidence in the briefs, and the parties' written and oral arguments, the court denied Swanson's Rule 12(b)(1) motion to dismiss because the operational elevator is subject to a *conditional* permit set to expire on September 30, 2025.

**1. Legal Standards**

Rule 12(b)(1) allows a defendant to move for dismissal based on lack of subject matter jurisdiction. A pleading's well-pleaded factual allegations pertaining to subject matter jurisdiction are taken as true unless denied or controverted by the movant. *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 237 n.1 (2024) (citing *Gibbs v. Buck*, 307 U.S. 66, 72 (1939); 5C *Wright & Miller's Federal Practice and Procedure* § 1363 (3d ed. 2004)). "[W]hen considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to

resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (citing *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)).

"[F]ederal courts have no jurisdiction to hear a case that is moot, that is, where no actual or live controversy exists." *Cook Inlet Treaty Tribes v. Shalala*, 166 F.3d 986, 989 (9th Cir. 1999). "The party asserting mootness bears the burden of establishing that there is no effective relief remaining that the court could provide." *S. Oregon Barter Fair v. Jackson Cnty.*, 372 F.3d 1128, 1134 (9th Cir. 2004) (internal citation omitted). Importantly, "the court's power to grant injunctive relief survives discontinuance of the illegal conduct." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) (internal citations omitted). Voluntary cessation of illegal conduct does not render a challenge to that conduct moot unless "(1) there is no reasonable expectation that the wrong will be repeated, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Barnes v. Healy*, 980 F.2d 572, 580 (9th Cir. 1992) (internal citations omitted). "The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to recur lies with the party asserting mootness." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000) (internal citation omitted).

**2. Analysis**

To the extent Taijeron seeks access to his *classes* on the second floor of SHS (Verif. Compl.), the court found that Taijeron's claim for injunctive relief was moot because the evidence and testimony established that none of Taijeron's classes for the upcoming 2025–26 school year would be held on the second floor. (*See* Def.'s Ex. E.) Further, even if Taijeron's schedule were subject to any changes prior to the start of or during the school year, Principal Meno's testimony demonstrated that he and SHS are committed to ensuring that all of Taijeron's classes and activities would meet on the ground floor.

- 7 -
Case 1:25-cv-00017    Document 34    Filed 08/11/25    Page 7 of 11

On the other hand, the court found that Taijeron's general claims for an operational elevator are not moot. As a threshold legal matter, although accommodations have been made to ensure that all of Taijeron's classes are located on the ground floor, Swanson has failed to carry his burden in demonstrating that Taijeron is not entitled to an operational elevator under the relevant anti-discrimination statutes and regulations notwithstanding the accommodations. *See D.R. ex rel. Courtney R. v. Antelope Valley Union High Sch. Dist.*, 746 F. Supp. 2d 1132, 1147 (C.D. Cal. 2010) ("When access to pathways and classrooms are obstructed, a public entity violates the ADA. . . . The DOJ has interpreted the requirement for accessibility and usability to preclude public entities from having inoperable elevators and locked accessible doors.") (internal alterations, quotations, and citations omitted); 28 C.F.R. § 35.133(a) ("A public entity shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the Act or this part."); 28 C.F.R. § 35.151(a)(1) ("Each facility or part of a facility constructed by, on behalf of, or for the use of a public entity shall be designed and constructed in such manner that the facility or part of the facility is readily accessible to and usable by individuals with disabilities, if the construction was commenced after January 26, 1992.").

Given Swanson's failure to establish that Taijeron lacked the legal right to an operational elevator at SHS, the court found that the action is not moot because the one currently operational elevator at SHS is subject to a "Conditional Permit to Operate." (Def.'s Ex. B.) The evidence and testimony demonstrated that GDOE has undertaken commendable efforts towards repairing an elevator at SHS, such that currently, there is one operational elevator in SHS Building 1000. (Def.'s Exs. A1–A4.) Taijeron will be able to use the elevator and access the second floor of SHS starting on the first day of instruction of the 2025–26 school year. (Aug. 4 Order 2, ECF No. 32.) However, the elevator's conditional permit automatically expires on September 30,

2025; an inspection must occur by that date in order for the elevator to continue operating for passenger use. (*See* Def.'s Ex. B.) At this point, although testimony indicated that the inspection may occur by that date, no inspection date has been scheduled. Accordingly, the progress on the elevator repairs to date has not "completely and irrevocably eradicated the effects of the alleged violation," *see Barnes v. Healy*, 980 F.2d at 580, and the court denied Swanson's Rule 12(b)(1) motion to dismiss because Taijeron's claims for an operational elevator at SHS are not moot. This denial is without prejudice; Swanson may refile his Rule 12(b)(1) motion to dismiss based on mootness if circumstances develop such that the effects of the denial of elevator access have been completely and irrevocably eradicated.

**III. PLAINTIFF'S AMENDED MOTION FOR PRELIMINARY INJUNCTION**

The court also denied Taijeron's amended motion for a preliminary injunction. In his written motion, Taijeron requested "a preliminary injunction order . . . to compel GDOE to repair, replace, or install an elevator at SHS and ensure compliance with accessibility requirements through monitoring." (Am. PI Mot. 12.) In particular, Taijeron sought "a preliminary injunction to compel GDOE to provide him meaningful vertical access to the educational classes, facilities and activities on the second floor of SHS during his . . . senior year at SHS that commences on August 7, 2025." (*Id*. at 6.) Swanson filed an opposition (Am. PI Opp'n, ECF No. 23), to which Taijeron replied (Am. PI Reply, ECF No. 25). At the evidentiary hearing, Taijeron's counsel clarified that, having seen Swanson's evidence of a functioning elevator with a conditional permit to operate, Taijeron still sought a preliminary injunction requiring Swanson to implement policies and procedures regarding the use and maintenance of elevators, to continue performing the necessary repairs for the operational elevator, and to provide all information regarding the inspection of the elevator to Taijeron moving forward.

The court denied Taijeron's request for a preliminary injunction because he failed to demonstrate he is likely to suffer irreparable harm in the absence of preliminary relief. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (internal citations omitted). As the court has already articulated, the evidence demonstrated that there is currently one operable elevator at SHS that Taijeron can use to access the second floor. While the conditional permit justifies the court's denial of Swanson's motion to dismiss based on mootness, the conditional permit is insufficient to support a finding that Taijeron is likely to suffer irreparable harm—by not having elevator access—at least between now and September 30, 2025. On the contrary, until the conditional permit expires, Taijeron is unlikely to suffer irreparable harm because he will almost certainly have access to an operational elevator at SHS. To further guarantee this certainty, after the hearing, the court issued its order memorializing Swanson and Principal Meno's testimony that Taijeron will have access to the operational elevator at SHS, and the elevator key will be available to Taijeron or his assigned aide. (Aug. 4 Order 2.) The denial of Taijeron's request for a preliminary injunction is without prejudice; Taijeron may refile his motion for a preliminary injunction if changed circumstances indicate that Taijeron is likely to experience irreparable harm based on Swanson's actions or inactions.

### IV. CONCLUSION

For the foregoing reasons, the court DENIED 1) Swanson's motion to dismiss under Rules 12(b)(1) and 12(b)(6) (ECF No. 15) and 2) Taijeron's amended motion for a preliminary

//

/

injunction (ECF No. 21).

       IT IS SO ORDERED this 11th day of August, 2025.

_____
RAMONA V. MANGLONA
District Judge