# IN THE DISTRICT COURT OF GUAM

LOGAN TAIJERON and
G.D., a minor by and through his parent,

    Plaintiffs,

    v.

JUDITH T. WON PAT, Ed.D., in her
official capacity as Superintendent of the
Guam Department of Education,

    Defendant.

Case No. 1:25-cv-00017

**DECISION AND ORDER
GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT,
DENYING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT, AND
DIRECTING ENTRY OF JUDGMENT
AND CASE CLOSURE**

Before the Court are Plaintiffs' Motion for Summary Judgment for Declaratory Relief (ECF No. 126) and Defendant's Motion for Summary Judgment (ECF No. 128). The Parties filed their respective oppositions (ECF Nos. 130 and 132) and their respective replies (ECF Nos. 135 and 136). On March 30, 2026, the Court held a hearing on the Parties' cross-motions for summary judgment. For the reasons set forth below, the Court GRANTS Defendant's Motion for Summary Judgment and DENIES Plaintiffs' Motion for Summary Judgment.

## I.    BACKGROUND

On April 18, 2025, Plaintiff Logan Taijeron filed a Complaint for Declaratory and Injunctive Relief against the Guam Department of Education ("GDOE") and Dr. Kenneth Erik Swanson in his official capacity as the then-Superintendent of GDOE. Mr. Taijeron, a student who requires the use of a wheelchair due to his cerebral palsy diagnosis, alleged that GDOE violated Title II of the Americans with Disabilities Act ("ADA"), section 504 of the Rehabilitation Act, and

1

two provisions of the Guam Code incorporating federal law by denying him reasonable accommodations as a junior attending Southern High School, a public school operated by GDOE. Mr. Taijeron sought declaratory relief and temporary, preliminary, and permanent injunctive relief alongside fees and costs. (*See generally* Compl., ECF No. 1.) Mr. Taijeron subsequently orally amended the Complaint to strike GDOE as a party defendant (*see* Mins., ECF No. 28; Mem. Decision & Order Granting Pl.'s Mot. to Strike GDOE as Def. & Limited Disc., ECF No. 29) and moved for a preliminary injunction against Dr. Swanson (*see* Am. Ex Parte Appl. (Mot.) for Order to Show Cause, ECF No. 21), while Dr. Swanson sought dismissal of the Complaint on grounds of mootness and failure to state a claim (*see* Def.'s Mot. to Dismiss, ECF No. 15). The Court denied both motions (*see* Mem. Decision Den. Def.'s Mot. to Dismiss & Pl.'s Am. Mot. for Prelim. Inj., ECF No. 34; *see also* Mins. (denying without prejudice Mr. Taijeron's motion for reconsideration of denial of motion for preliminary injunction), ECF No. 49), whereupon Dr. Swanson filed an Answer (*see* Answer, ECF No. 39).

Thereafter, Mr. Taijeron sought and obtained leave to file a First Amended Complaint ("FAC," ECF No. 67), in which he added minor G.D., a freshman at Southern High School who also requires the use of a wheelchair due to a cerebral palsy diagnosis, as a party plaintiff and removed allegations asserting violations of Guam law. (*See* Order Granting Pl.'s Mot. for Leave to Am. Compl., ECF No. 66.) Dr. Swanson filed a new Answer (ECF No. 73). Dr. Swanson subsequently ceased to be GDOE Superintendent; Dr. Judith T. Won Pat was automatically substituted as the named party defendant in her official capacity as GDOE Acting Superintendent.[1] (*See* Notice of Automatic Substitution, ECF No. 80.) While discovery was briefly reopened to

---

[1] Dr. Won Pat's recent status reports suggest that she formally acceded as GDOE Superintendent at some point between May 4 and May 18, 2026. (*Compare* Def. GDOE Superintendent Judith T. Won Pat's May 18, 2026 Status Report, ECF No. 142, *with* Def. GDOE Acting Superintendent Judith T. Won Pat's May 4, 2026 Status Report, ECF No 141.)

permit the Parties to engage in discovery concerning G.D. (*see* Order Granting in Part Def.'s Request for Disc., ECF No. 98), the Parties filed cross-motions for summary judgment. The Court ultimately ordered all summary judgment filings to be stricken in view of the Parties' failure to comply with the rules governing summary judgment motions and directed the Parties to file new, rule-compliant summary judgment motions on an expedited basis. (Order Striking Mots. for Summ. J. & Related Filings, ECF No. 123.) In that same order, the Court vacated the final pretrial conference and bench trial and set a hearing on the Parties' forthcoming summary judgment motions for March 30, 2026. (*Id.*)

The Parties filed their new cross-motions for summary judgment on March 11, 2026, which motions were fully briefed by March 25, 2026. On March 30, 2026, counsel for all Parties appeared and presented oral arguments. At the conclusion of the hearing, the Court took the Parties' cross-motions for summary judgment under submission. (Mins., ECF No. 137.)

## II.     LEGAL STANDARD

A party moving for summary judgment must "identify[] each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) (explaining that "[o]ne of the principal purposes" of summary judgment procedure "is to isolate and dispose of factually unsupported claims or defenses"). A fact is "material" if it may "affect the outcome of the suit under the governing law," while a dispute about a material fact is "genuine" if the record permits a reasonable factfinder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant "always bears the initial responsibility" of demonstrating the absence of any genuine dispute of material fact. *Celotex Corp.*, 477 U.S. at 323. Where the movant

> would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case. Once the moving party comes forward with sufficient evidence, the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense.

*C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and quotation marks omitted). "In contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006) (citing *Celotex Corp.*, 477 U.S. at 325). "When the moving party has carried its [initial] burden . . . , its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not rest on the pleadings and must come forward with evidence and specific facts showing that there exists a genuine dispute of material fact. *Id.* at 587; *see also Anderson*, 477 U.S. at 247, 249-50 (explaining that the "mere existence of *some* alleged factual dispute" or evidence that is "merely colorable" or "not significantly probative" "will not defeat an otherwise properly supported motion for summary judgment").

In deciding a motion for summary judgment, the Court views the record and draws all reasonable inferences in the light most favorable to the non-movant. *Anderson*, 477 U.S. at 255; *see also id.* ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are [the factfinder-at-trial's] functions, not those of a judge,

4

[when] he is ruling on a motion for summary judgment[.]"). Where, as here, parties submit cross-motions for summary judgment, the Court must assess the motions separately, with each motion considered on its own merits alongside the evidence submitted in support thereof. *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The parties' simultaneously asserting that "there are no uncontested issues of material fact[] does not vitiate the court's responsibility to determine whether disputed issues of material fact are present" nor authorize the entry of summary judgment should a genuine dispute of material fact exist. *Id.* (quoting *United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir. 1978)). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," as "there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)); *see also Celotex Corp.*, 477 U.S. at 322-23 (explaining that the moving party is entitled to judgment as a matter of law where non-movant fails "to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof" because such failure "necessarily renders all other facts immaterial").

### III.     ANALYSIS[2]

The Court first addresses Dr. Won Pat's Motion in view of the arguments concerning jurisdiction raised therein. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-102 (1998)

---

[2] The Court cites to Parties' summary judgment filings by the pagination generated by CM/ECF. Dr. Won Pat's summary judgment motion (ECF No. 128) and reply (ECF No. 136) are cited as "Def.'s Mot." and "Def.'s Reply," respectively, while Plaintiffs' opposition (ECF No. 130) is cited as "Pls.' Opp'n."

Furthermore, the Court cites to the Parties' enumerated facts as if each numbered fact was a paragraph, *e.g.*, Def.'s Concise Statement of Material Facts in Supp. of Def.'s Mot. for Summ. J. ¶ 1 ("The 12-9-25 First Amended Complaint prays for a declaration . . . .") [hereinafter "Def.'s MSJ Statement"], ECF No. 129; Pl.'s Concise Statement of Material Facts in Opp'n to Mot. for Summ. J. ¶ 2 ("PARTIALLY UNDISPUTED the SHS Building 1000 elevator is currently functioning . . . .") [hereinafter "Pls.' Opp'n Statement"], ECF No. 131; Pls.' Concise Statement of Undisputed Material Facts in Supp. of Mot. for

(collecting cases for proposition that federal courts must first resolve Article III jurisdictional issues before merits questions); *cf. Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999) (clarifying that *Steel Co.* does not foreclose federal courts from "choos[ing] among threshold grounds for denying audience to a case on the merits"). After concluding that this Court lacks jurisdiction over Mr. Taijeron's claims and finding that Dr. Won Pat's Motion should be granted as to all of G.D.'s claims, the Court turns to the evidence supporting Plaintiffs' Motion in view of the Court's "independent duty to review each cross-motion and its supporting evidence," *Fair Hous. Council*, 249 F.3d at 1137, and concludes that Plaintiffs' proffered evidence fails to demonstrate the existence of a genuine dispute of material fact to grant summary judgment in their favor or stave off summary judgment in Dr. Won Pat's favor.

**A. Defendant's Motion**

**1. Parties' Arguments**

Dr. Won Pat contends summary judgment in her favor as to all of Plaintiffs' claims is appropriate for three reasons. First, she asserts that there is no genuine issue of material fact concerning Plaintiffs' requested injunction requiring GDOE to repair or replace elevators at Southern High School such that the undisputed factual record forecloses the issuance of permanent injunctive relief. (Def.'s Mot. 8-17 (asserting factual record fails to satisfy any of the four elements for issuance of a permanent injunction), ECF No. 128.) Specifically, Dr. Won Pat contends that (1) Plaintiffs cannot "disprove the existence of the operable permitted elevator" (*id.* at 8-9); (2) the record shows that Plaintiffs' classes and club activities do not require access to higher floors (*id.* at 9-10); (3) Plaintiffs' own conduct indicates Plaintiffs have no interest in using the elevator (*id.*

Summ. J. ¶ 5 ("No other elevator repair or replacement vendor or contract was procured . . . .") [hereinafter "Pls.' MSJ Statement"], ECF No. 127; Def.'s Resp. & Submission of Factual Disputes in Supp. of Opp'n to Pls.' Mot. for Summ. J. for Declaratory Relief ¶ 3(b) ("All clubs and originations meet on the first floor.") [hereinafter "Def.'s Opp'n Statement"], ECF No. 133.

at 10-11); and (4) Plaintiffs' requested injunction would "require[] what has already been provided" by GDOE (*id.* at 11-16) and is otherwise not proportional or narrowly tailored to the harm to Plaintiffs (*id.* at 17).

Second, Dr. Won Pat contends that there is no genuine dispute of material fact concerning Plaintiffs' prayer for policies, procedures, and practices to prevent future accessibility issues, namely, that GDOE has already implemented such policies, procedures, and practices. (*Id.* at 18.) Dr. Won Pat further asserts that Plaintiffs' reference to "future accessibility issues" is wholly speculative (*id.*) and reiterates that Plaintiffs' own conduct indicates that Plaintiffs are not at risk of imminent, irreparable harm (*id.* at 19-20).

Third, Dr. Won Pat contends that declaratory relief is inappropriate because the undisputed factual record shows that there is no case or controversy as required by Article III of the U.S. Constitution and case law for issuance of declaratory relief. (*Id.* at 20-22; *see also id.* at 21 (contending Plaintiffs are "shoe stringing declaratory relief as a last-ditch effort to become a prevailing party").)

In opposition,[3] Plaintiffs contend that genuine disputes of material fact still exist, thus precluding summary judgment in Dr. Won Pat's favor. (Pls.' Opp'n 8-11 (disputing Dr. Won Pat's asserted fact numbers 2-9, 11, 13-16, 19), ECF No. 130; *see also id.* at 3-4 (identifying Dr. Won Pat's asserted fact numbers 1, 10, 12, 17, 18, and 20 as undisputed).) Plaintiffs specifically dispute (1) whether a non-conditional permit for operation of the sole working elevator at Southern High

---

[3] Plaintiffs object to Dr. Won Pat's filings on grounds of noncompliance with the rules and the Court's order striking filings. (Pls.' Opp'n 6-7; *see also* Pls.' Reply 2-3, ECF No. 135.) As stated during the hearing, Plaintiffs' objections are overruled because (1) Plaintiffs do not engage with the latter part of Civil Local Rule 56(e); (2) Dr. Won Pat's citations are sufficiently unambiguous and specific such that navigation of the record materials attached to her Concise Statement is not unduly burdensome; and (3) Plaintiffs overread the Court's order striking the Parties' initial round of summary judgment briefing as the order did not somehow preclude reattachment of stricken exhibits or otherwise limit the record.

School will issue (*id.* at 8-9 (noting existence of same deficiencies across inspection reports and asserting such deficiencies preventing issuance of non-conditional permit will be revealed at trial); *id.* at 10 (asserting that elevator inspector continues to use different edition of safety code)); (2) whether GDOE has engaged in fulsome, timely repairs of the elevator (*id.* at 10); and (3) whether Plaintiffs require use of the elevator for access to their classes and club activities and are able to communicate such need to access and use the elevator (*id.* at 10-11). Plaintiffs further contend that Dr. Won Pat does not meet her burden of demonstrating that GDOE's violations of federal disability accommodations law are unlikely to recur. (*Id.* at 11-12 (noting GDOE's historical noncompliance and that "risk of future violations remains" especially as to G.D., a freshman).)

In reply, Dr. Won Pat contends that Plaintiffs' claims are mooted by Mr. Taijeron's imminent graduation and GDOE's repair of the single elevator at Southern High School. (Def.'s Reply 4, ECF No. 136; *see also id.* at 5-6, 11-12, 14, 15-16 (contending that even with wrongly stricter standard for issuance of permit, permit was issued and elevator has been maintained and repaired within the same day of any breakdowns pursuant to contract with experienced maintenance company).) Dr. Won Pat further re-raises her arguments concerning Plaintiffs' failure to meet their burden as to the elements for injunctive relief. (*See id.* at 8-9 (no imminent irreparable harm based on conditionality of permit); *id.* at 7-8, 10-11, 12-13, 13-14 (no imminent irreparable harm because Plaintiffs have no need to access the second floor and have not asked for access).) In addition, Dr. Won Pat contends that Plaintiffs' characterization of their claims requires Plaintiffs to first exhaust their administrative remedies as required by the Individuals with Disabilities Education Act ("IDEA") (*id.* at 4-5) and otherwise disputes facts that fall outside of the one-year statute of limitations (*id.* at 17).

## 2. Discussion

### a. Plaintiff Taijeron's claims must be dismissed for lack of subject-matter jurisdiction because no live controversy exists. Plaintiff G.D.'s claims, however, remain live for adjudication.

As to Dr. Won Pat's arguments contending that Plaintiffs' request for declaratory relief is moot, as a starting matter, the Supreme Court has consistently held that actions for declaratory relief are subject to the case-or-controversy requirement set forth in Article III of the U.S. Constitution. *California v. Texas*, 593 U.S. 659, 672-73 (2021); *see also* 28 U.S.C. § 2201(a) ("In a case of actual controversy *within its jurisdiction*, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." (emphasis added)). As part of the Article III case-or-controversy requirement, the Supreme Court has

> repeatedly held that "an actual controversy" must exist not only "at the time the complaint is filed," but through "all stages of the litigation." *Alvarez v. Smith*, [558 U.S. 87, 92 (2009)] (internal quotation marks omitted); *Arizonans for Official English v. Arizona*, [520 U.S 43, 67 (1997)] ("To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed'" (quoting *Preiser v. Newkirk*, [422 U.S. 395, 401 (1975)])).

> A case becomes moot—and therefore no longer a "Case" or "Controversy" for the purposes of Article III—"when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in their outcome." *Murphy v. Hunt*, [455 U.S. 478, 481 (U.S. 1982)] (*per curiam*) (some internal quotation marks omitted). No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute "is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Alvarez*, [558 U.S. at 93].

*Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90-91 (2013); *see also Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 867 (9th Cir. 2017) ("Stated another way, the central question . . . is whether changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for

9

meaningful relief." (quoting *S. Cal. Painters & Allied Trades, Dist. Council No. 36 v. Rodin & Co.*, 558 F.3d 1028, 1035 (9th Cir. 2009))). As mootness bears on the Court's limited subject-matter jurisdiction,[4] *see Wolfson v. Brammer*, 616 F.3d 1045, 1053 (9th Cir. 2010), each Plaintiff bears the ultimate burden of showing that each of their claims is not moot, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Haro v. Sebelius*, 747 F.3d 1099, 1113 (9th Cir. 2014) (noting general rule that "once federal subject matter jurisdiction is established over the underlying case between plaintiff and defendant, the jurisdictional propriety of each additional claim is to be assessed individually" (brackets omitted) (quoting *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 66 n.1 (1996))). In addition,

> a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued. *City of Mesquite v. Aladdin's Castle, Inc.*, [455 U.S. 283, 289 (1982).] Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends. Given this concern, our cases have explained that "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to occur." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, [528 U.S. 167, 190 (2000)].

*Already, LLC*, 568 U.S. at 91.

---

[4] Plaintiffs' claims rest on two federal statutes that confer subject-matter jurisdiction and set forth the basis for Plaintiffs' substantive claims for relief. *See* 42 U.S.C. §§ 12132, 12133 (ADA); 29 U.S.C. §§ 794, 794a (Rehabilitation Act); *see also A.J.T. v. Osseo Area Schs.*, 605 U.S. 335, 339 (2025). As such, the Court must apply the standard and presumptions of summary judgment procedure to Dr. Won Pat's jurisdictional challenges, and cannot resolve factual disputes bearing on jurisdiction otherwise appropriate for resolving a factual attack to jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, because "the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of [the] action[.]" *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (internal quotation marks omitted); *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987).

In their First Amended Compliant, Plaintiffs seek "[a] declaration that Plaintiffs have the right to seek enforcement of their rights under the ADA and Section 504 [of the Rehabilitation Act], and a declaration that Defendants' [sic] actions and inactions violated the rights of the Plaintiffs under the ADA and Section 504." (FAC 5-6 (demand for relief) (first item), ECF No. 67.) Specifically, Plaintiffs complain of the denial of "reasonable accommodations necessary for meaningful access to the benefits of a public education" and identify the "nonfunctioning elevators and failure to provide access" to second-floor classes and club activities at Southern High School. (*Id.* ¶ 15.) The undisputed factual record shows that (1) one elevator at Building 1000 is operational (*see* Def.'s MSJ Statement ¶ 2, ECF No. 129; Pls.' Opp'n Statement ¶ 2, ECF No. 131); (2) the Guam Department of Public Works has issued a non-conditional permit for operation of the elevator that will expire on August 16, 2026 (*see* Def.'s MSJ Statement ¶ 2; Pls.' Opp'n Statement ¶ 2 (disputing whether the permit was issued "legitimately" in view of the deficiencies identified in the February 16, 2026, inspection report, similar deficiencies identified in past inspection reports, and the possibility of "untoward, biased influence and or pressure upon" the relevant officials); *see also* Def.'s Reply 15 (contending Plaintiffs' counsel "engaged in undue influence" to secure rescission of earlier permit)); (3) both Plaintiffs presently have no classes, club activities, or other educational need that requires access to the second floor (*see* Def.'s MSJ Statement ¶¶ 7, 8, 16, 19; Pls.' Opp'n Statement ¶¶ 7, 8, 16, 19 (asserting dispute only as to the location of Mr. Taijeron's *past* classes and club activities)); and (4) Mr. Taijeron will graduate from Southern High School in May 2026 (*see* Def.'s MSJ Statement ¶ 20; Pls.' Opp'n Statement ¶ 20).

At this juncture, declaratory relief as to Mr. Taijeron is not appropriate because there remains no live controversy concerning his claims—all of which are prospective equitable claims. Under Title II of the ADA and Section 504 of the Rehabilitation Act, the core inquiry is whether a

person with a disability was denied "meaningful access" to the *programs, services, and benefits* provided by a public entity receiving federal funds, *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1204 (9th Cir. 2016); *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1102 (9th Cir. 2013), and not the "more stringent requirements aimed at ensuring that every *facility* is equally accessible to disabled persons" under Title III of the ADA, *Cohen v. City of Culver City*, 754 F.3d 690, 695 n.4 (9th Cir. 2014). *See also Daubert v. Lindsay Unified Sch. Dist.*, 760 F.3d 982, 986 (9th Cir. 2014) ("Title II's emphasis on 'program accessibility' rather than 'facilities accessibility' was intended to ensure broad access to public services, while, at the same time, providing public entities with the flexibility to choose how best to make access available." (quoting *Parker v. Universidad de Puerto Rico*, 225 F.3d 1, 6 (1st Cir. 2000))).

Here, the programs, services, and benefits at issue stem from GDOE's provision of public education to students at Southern High School. Mr. Taijeron's May 2026 graduation from Southern High School terminates his status as a student—*i.e.*, an individual entitled to meaningful access to such programs, services, and benefits. Any potential issues with the elevator in the future do not pose a threat to Mr. Taijeron's rights under federal disability law, as presented in this action: even if GDOE's "allegedly wrongful behavior" of failing to provide an operable elevator were "to recur," Mr. Taijeron would suffer no injury because there is no possibility of him being assigned to classes, joining in club activities, or participating in other aspects of public education *as a student* after graduation. *Friends of the Earth*, 528 U.S. at 190; *see also DeFunis v. Odegaard*, 416 U.S. 312, 317 (1974) (dismissing case as moot where plaintiff sued law school for impermissible racial discrimination in admissions procedures, law school ultimately admitted plaintiff, plaintiff was permitted to register for final term, and record showed that plaintiff was "now entitled to complete his legal studies . . . and to receive his degree" "regardless of any

decision [the] Court might reach on the merits of this case"). Thus, there is no "meaningful" relief that the Court could grant Mr. Taijeron through a declaratory judgment. *Bayer*, 861 F.3d at 867. In other words, if the Court were to issue Mr. Taijeron's requested declaratory judgment, certifying his right to enforce his rights under federal disability law and declaring that GDOE's past conduct violated those rights, such declaratory relief would not "affect[] the behavior of the defendant towards the plaintiff." *Id.* at 868 (emphasis removed) (quoting *Hewitt v. Helms*, 482 U.S. 755, 761 (1987)). As such, the Court lacks jurisdiction to issue declaratory relief as to Mr. Taijeron. *See also id.* ("[A] declaratory judgment merely adjudicating past violations of federal law—as opposed to continuing or future violations of federal law—is not an appropriate exercise of federal jurisdiction.").

The same rationale also applies to Mr. Taijeron's remaining claims for prospective equitable relief such that the Court lacks jurisdiction over the claims.[5] The First Amended Complaint seeks three forms of injunctive relief requiring GDOE to "[r]epair or replace" the elevators at Southern High School, "[i]mplement policies and procedures to prevent future accessibility issues[,]" and "provide Plaintiffs with functioning elevators or an equivalent means of access to meaningful access [sic] to their educational services" at Southern High School. (FAC 5-6 (prayer for relief) (items 2, 3, and 5).) The Ninth Circuit has explained:

> "A request for injunctive relief remains live only so long as there is some present harm left to enjoin." *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1502 (D.C. Cir. 1995). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Neal v. City of Seattle*, 66 F.3d 1064, 1066 (9th Cir. 1995) (quoting *City of Los Angeles v. Lyons*, [461 U.S. 95, 102 (1983)]). Thus, a claim for injunctive relief becomes moot once subsequent events have made clear the conduct alleged as the

---

[5] The Court's lack of jurisdiction over the non-declaratory-relief aspects of Mr. Taijeron's claims is an independent basis to dismiss Mr. Taijeron's prayer for declaratory relief because the Declaratory Judgment Act does not confer a standalone basis for jurisdiction. *California*, 593 U.S. at 672; 22 U.S.C. § 2201(a).

> basis for the requested relief "could not be reasonably be expected to recur." [*Ruiz v. City of Santa Maria*, 160 F.3d 543, 549 (9th Cir. 1998)] (quoting *Chinese for Affirmative Action v. Leguennec*, 580 F.2d 1006, 1009 (9th Cir. 1978)). A plaintiff who cannot reasonably be expected to benefit from prospective relief ordered against the defendant has no claim for an injunction. *See Wal-Mart Stores, Inc. v. Dukes*, [564 U.S. 338, 364-65 (2011)] (concluding plaintiffs whose employment ended after an action was filed had no claim for injunctive relief against their former employer concerning its employment practices); *Walsh v. Nevada Dep't of Human Res.*, 471 F.3d 1033, 1036-37 (9th Cir. 2006) (concluding a plaintiff requesting an injunction requiring her former employer to adopt and enforce lawful policies "lacked standing to sue for injunctive relief from which she would not likely benefit").

*Bayer*, 861 F.3d at 864. Here, there is no "present harm left to enjoin" as to Mr. Taijeron. The record shows that he has no educational need or purpose in accessing the parts of Southern High School that would require a functional elevator. Nor would he "be expected to benefit from prospective relief ordered against" Dr. Won Pat because his undisputed May 2026 graduation terminates his status as an individual entitled to meaningful access to GDOE's provision of public education prior to the expiration of the permit for operating the elevator.[6] Therefore, the Court

---

[6] Thus, the posture of the case now as to Mr. Taijeron is distinguishable from the posture at the motion to dismiss stage. (*See* Mem. Decision Den. Def.'s Mot. to Dismiss & Pl.'s Am. Mot. for Prelim. Inj. 8-9 (finding Mr. Taijeron's "general claims for an operational elevator" to not be moot, notwithstanding GDOE's "commendable efforts toward[] repairing an elevator" at Southern High School to ensure Mr. Taijeron would have access by the first day of the 2025-26 school year, in view of the then-effective elevator permit's conditional nature and expiration date of September 30, 2025, and the lack of any scheduled inspection for renewal of the permit or issuance of a non-conditional permit), ECF No. 34.)

At oral argument, Plaintiffs' counsel asserted that Mr. Taijeron's claims are not moot because he would still require use of the elevator after graduation should he decide to visit Southern High School. Setting aside the speculative, non-specific nature of such an assertion, the harm Mr. Taijeron would suffer would be the denial of meaningful access to Southern High School's facilities *as a visitor*—*i.e.*, whatever programs, services, and benefits GDOE provides visitors to Southern High School also requires access to areas requiring use of an elevator, *cf. Daubert*, 760 F.3d at 987-88 (holding public high school complied with Title II where it provided "program access" to football games, notwithstanding inaccessibility of bleachers, because bleachers counted as "existing facilities" not subject to post-1992 design and integration requirements, school offered multiple other locations with unobstructed views of game, the "particular social experience" inherent in sitting in bleachers was "merely incidental to the program" subject to Title II, and seating on and around bleachers was "appropriately integrated under the circumstances")—and *not as a student*. "It is well-settled that once a student graduates, he no longer has a live case or controversy

lacks jurisdiction to issue injunctive relief as to Mr. Taijeron and must dismiss without prejudice all of Mr. Taijeron's claims.[7]  Fed. R. Civ. P. 12(h)(3); *Hampton v. Pac. Inv. Mgmt. Co. LLC*, 869 F.3d 844, 846 (9th Cir. 2017).

As to G.D., however, the record contains genuine disputes of fact that bear on whether his claims are moot.  First, G.D. is a freshman at Southern High School, with the record lacking any suggestion that he will not be attending Southern High School for the foreseeable future.  *Cf. DeFunis*, 416 U.S. at 318 (noting that case was mooted "upon the simple fact that [plaintiff] is now in the final quarter of the final year of his course of study, and the settled and unchallenged policy of the [school] to permit him to complete the term for which he is now enrolled").  Second, the record does not permit the conclusion or inference that G.D. will never have a legally protected interest in accessing the parts of Southern High School requiring use of an elevator.  To the contrary, the record indicates that GDOE previously has assigned at least one other similarly situated student—Mr. Taijeron—to classes, and authorized club activities, that take place on the second floor of Southern High School, notwithstanding the student's disability and the lack of a functioning elevator.  (*See* Pls.' Opp'n Statement ¶¶ 7, 8 (noting that Mr. Taijeron previously had two classes on the second floor of Southern High School during the 2024-25 school year and had expressed interest in joining an anime club that met on the second floor).)  Third, the record is disputed as to whether the sole operable elevator at Southern High School will indeed be permitted

justifying declaratory and injunctive relief against a school's action or policy."  *Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1098 (9th Cir. 2000).

[7] Mr. Taijeron's only other prayer for specific relief is for attorneys' fees and costs under the ADA and Rehabilitation Act.  The dismissal of his substantive claims vitiates any basis for awarding fees and costs. *See* 42 U.S.C. § 12205 (ADA requires prevailing party status for fee-shifting); 29 U.S.C. § 794a(b) (Rehabilitation Act requires same); *Oscar v. Alaska Dep't of Educ. & Early Dev.*, 541 F.3d 978, 981 (9th Cir. 2008) (discussing determination of "prevailing party" status as defined in *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598 (2001)).

beyond the current August 16, 2026, expiration date, especially in view of the continuing issues identified across inspection reports prepared in 2025 and 2026, litigation concerning the correct inspection criteria, and the circumstances surrounding the issuance of a permit. (*See id.* ¶ 2.) Accordingly, Dr. Won Pat has not met her "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to occur." *Already, LLC*, 568 U.S. at 91 (quoting *Friends of the Earth*, 528 U.S. at 190). G.D.'s claims are not moot.

### b.  Plaintiff G.D.'s claims are not brought under the IDEA.

Dr. Won Pat's argument, raised for the first time in reply, that Plaintiffs' claims are subject to the administrative exhaustion requirement for IDEA claims is substantively identical to arguments raised in her motion to dismiss. The Court rejects Dr. Won Pat's renewed arguments for the same reasons as articulated in the Memorandum Decision denying her motion to dismiss. (*See* Mem. Decision Den. Def.'s Mot. to Dismiss & Pl.'s Am. Mot. for Prelim. Inj. 4-5 (allegations seek relief "in the form of non-discriminatory access to Taijeron's public high school as guaranteed by Title II of the ADA and Section 504, rather than individually tailored educational services as guaranteed by the IDEA" and claims could have been brought (1) if the facility was not a school or (2) by an adult at Southern High School), ECF No. 34.)

### c.  Summary judgment on Plaintiff G.D.'s claims is appropriate.

Dr. Won Pat's remaining arguments urging summary judgment in her favor effectively turn on whether the record does not permit a reasonable factfinder to find in G.D.'s favor as to any of the required considerations for issuance of permanent injunctive relief. The Supreme Court has explained:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for

that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.  The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court . . . .

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (citations omitted); *see also Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-13 (1982) ("[A]n injunction . . . is not a remedy which issues as of course, or to restrain an act the injurious consequences of which are merely trifling. . . .  The grant of jurisdiction to ensure compliance with a statute hardly suggests an absolute duty to do so under any and all circumstances, and a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law."  (internal citations and quotation marks omitted)).

As to the first factor—whether G.D. has suffered an irreparable injury—the Court finds that the record does not permit a reasonable factfinder to conclude that G.D. has suffered any injury.  The Ninth Circuit has explained:

A plaintiff bringing suit under section 504 or Title II of the ADA must show:  (1) she is a qualified individual with a disability; (2) she was denied "a reasonable accommodation that [she] needs in order to enjoy meaningful access to the benefits of public services;" and (3) the program providing the benefit receives federal financial assistance.  *Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 201).  A plaintiff may satisfy prong two by showing that the federally funded program denied her services that she needed to enjoy meaningful access to the benefits of a public education and that were available as reasonable accommodations. *Id.* at 1097-98.  A plaintiff can also satisfy prong two by showing that the program denied her meaningful access to public education through another means, such as by violating a regulation that implements section 504's prohibitions.  [*Mark H. v. Lemahieu*, 513 F.3d 922, 938-39 (9th Cir. 2008)]; *see Alexander v. Choate*, [469 U.S. 287, 301 (1985)] (interpreting section 504 to "requir[e] that an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers").

*A.G.*, 815 F.3d at 1204.[8]  The Parties do not dispute, and the record does not show any genuine dispute of material fact bearing on, G.D.'s status as a "qualified individual with a disability" or that GDOE is a "program . . . receiv[ing] federal financial assistance."  *Id.*  The crux of the Parties' dispute thus turns on whether G.D. was denied "services that [he] needed to enjoy meaningful access to the benefits of a public education and that were available as reasonable accommodations."  *Id.*

The Parties' dueling concise statements of fact reveal that there is no dispute that G.D. has *not* been denied any such services.  Dr. Won Pat's concise statement specifically sets forth:

> 7.  Neither plaintiff has an academic class to attend on the 2nd Floor of SHS, and both plaintiffs currently have access to all appropriate subject matter classes, facilities, and activities.
>
> 8.  Neither plaintiff has a club or organizational regular meeting to attend on the 2nd Floor of SHS.
>
> 9.  Neither plaintiff has requested 2nd floor access to attend a class or club meeting.
>
> [. . .]
>
> 19.  Plaintiff G.D. currently has access to all appropriate subject matter classes, facilities and activities during their current Freshman Year SY25-26 because all his classes are on the first floor of the SHS campus, and all activities and clubs hold their meetings on the first floor and not the second floor.

(Def.'s MSJ Statement ¶¶ 7-9, 19 (boldface removed).)  In response to fact numbers 7 and 8, Plaintiffs only raised a dispute as to Mr. Taijeron's class assignments in previous academic years and interest in a club that initially met on the second floor of Southern High School.  (Pls.' Opp'n

---

[8] *See also Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) ("There is no significant difference in the analysis of the rights and obligations created by the ADA and the Rehabilitation Act.  Thus, courts have applied the same analysis brought under both statutes, and courts routinely look to Rehabilitation Act case law to interpret the rights and obligations created by the ADA[.]"  (internal citations omitted)).

Statement ¶ 7 ("Plaintiffs DISPUTE as to Plaintiff Logan having a history class and his math class in school year 2023-2024 initially on 2nd floor of SHS during the fall semester of school year 2024-2025."); *id.* ¶ 8 ("Plaintiffs DISPUTE only as to Plaintiff Logan initially sought to participate in an Anime club whose meetings first held on second floor of SHS.").) As to fact number 9, Plaintiffs stated: "DISPUTED in part because Plaintiff G.D. is unable to communicate due to his disabilities which include an inability to speak and severely limited cognition[.]" (*Id.* ¶ 9.) And in response to fact number 19, Plaintiffs reasserted their reasons for disputing fact numbers 7 through 9 before stating: "Undisputed that Defendant has all of Plaintiff G.D.'s classes [] on the first floor of the SHS campus, and all activities and clubs hold their meetings only on the first floor." (*Id.* ¶ 19.) Plaintiffs do not identify a specific program, activity, or benefit, to which G.D. is entitled "meaningful access" as part of GDOE's provision of public education at Southern High School that is not accessible by the use of the one working elevator, or has not already been, or will be, provided through the shifting of classes and club activities to the first floor of Southern High School to accommodate G.D.'s mobility challenges. Furthermore, insofar as there may be some other benefit to having on-demand access to the second floor that is not strictly tied to classes and clubs, *cf., e.g., D.R. ex rel. Courtney R. v. Antelope Valley Union High Sch. Dist.*, 746 F. Supp. 2d 1132, 1147 (C.D. Cal. 2010) ("[E]ven if some services and activities have been relocated to the first floor, Plaintiff is still unable to access the school library, attend school functions, and make spur-of-the-moment decisions to go upstairs or downstairs."), Plaintiffs fail to meet their burden at summary judgment to come forward with specific materials to make out their case, *see Celotex Corp.*, 477 U.S. at 322-23; *Anderson*, 477 U.S. at 249-50; *Matsushita*, 475 U.S. at 598.

As such, the Court is constrained to conclude that the record does not permit a reasonable factfinder to find that G.D. has suffered any irreparable injury as required for issuance of a

permanent injunction. Consideration of the remaining factors for issuance of a permanent injunction is unnecessary because Plaintiffs' failure to make out a sufficient showing as to irreparable injury commands denial of a permanent injunction as a matter of law. *eBay Inc.*, 547 U.S. at 391; *Weinberger*, 456 U.S. at 312 ("The Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies."). Summary judgment in Dr. Won Pat's favor on G.D.'s claims seeking injunctive relief is therefore appropriate.

The Court's conclusion as to the lack of irreparable injury for issuance of injunctive relief also commands summary judgment in Dr. Won Pat's favor on G.D.'s claims seeking declaratory relief. As discussed *supra*, the undisputed factual record shows that G.D.'s claims under Title II of the ADA and section 504 of the Rehabilitation Act fail as a matter of law because the record does not permit a reasonable factfinder to find in G.D.'s favor as to "an element essential to [his] case, and on which [he] will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. The failure of the substantive causes of action underlying a prayer for declaratory relief necessarily forecloses any issuance of such declaratory relief. *See Chen v. JPMorgan Chase Bank, N.A.*, 745 F. Supp. 3d 1025, 1036-37 (C.D. Cal. 2024) (collecting cases for proposition that "declaratory relief is best considered a remedy, which cannot, on its own, support an action").

### d. The evidence in support of Plaintiffs' Motion does not demonstrate the existence of a genuine dispute of material fact.

"[A] simultaneous cross-motion is another means to bring to the district court's attention a controversy over the facts." *Fair Hous. Council*, 249 F.3d at 1137. As such, the Court must examine whether Plaintiffs' proffered facts and record materials in support of their Motion entitles them to summary judgment or raises a genuine dispute of material fact to preclude summary judgment in Dr. Won Pat's favor. If such facts and materials "make a sufficient showing" on each

"essential element of [their] case," *Celotex Corp.*, 477 U.S. at 322, summary judgment in Dr. Won Pat's favor is inappropriate. *See also C.A.R. Transp. Brokerage*, 213 F.3d at 480 (describing burden as "com[ing] forward with evidence which would entitle [the party bearing the burden of proof at trial] to a directed verdict if the evidence went uncontroverted at trial" (internal quotation marks omitted)).

As to Mr. Taijeron's claims, Plaintiffs' proffered facts and record materials do not disturb the Court's conclusion *supra* that the Court lacks jurisdiction over his claims. Plaintiffs identify instances in the past where Mr. Taijeron was denied "access to the classes, facilities, activities, and services of the upper floors of [Southern High School]" (Pls.' MSJ Statement ¶ 3, ECF No. 127.) But as explained *supra*, Mr. Taijeron's graduation moots all of his injunctive relief claims because he no longer is entitled to meaningful access to the classes, facilities, activities, and services as part of GDOE's provision of public education at Southern High School. *See supra* Part III-A-2-a.

As to G.D.'s claims, Plaintiffs' proffered facts and record materials fail to establish that G.D. suffered an injury. Plaintiffs set forth two fact statements that specifically concern G.D. First, Plaintiffs state that due to his cerebral palsy diagnosis, G.D. requires a wheelchair to "access his education and the classes, services, facilities, and activities of [Southern High School.]" (Pls.' MSJ Statement ¶ 7). Second, Plaintiffs state that when G.D. began attended Southern High School on August 7, 2025, none of the five elevators on campus were functional, thus "prevent[ing] [him] from accessing his education and the classes, services, facilities, and activities" of Southern High School. (*Id.* ¶ 8.) As in their opposition to Dr. Won Pat's Motion, Plaintiffs do not identify specific "classes, services, facilities, and activities" to which G.D. was denied meaningful access. Nor do the evidentiary materials cited in support of the two fact statements—two paragraphs of Plaintiffs' Amended Complaint and a declaration by G.D.'s father (*see id.* ¶¶ 7, 8)—provide any necessary

detail.  Instead, both documents merely repeat the generic phrases of access to "classes, facilities, or activities" (Pls.' MSJ Statement, Ex. H ¶ 3, ECF No. 127, at 29) and "access [to] education" (Pls.' MSJ Statement, Ex. I ¶ 8, ECF No. 127, at 31).  Consequently, consistent with the Court's discussion *supra*, *see supra* Part III-A-2-c, Plaintiffs' failures to identify a specific program, activity, or benefit to which G.D. is entitled "meaningful access" and to show why such access would not be provided by GDOE's scheduling and single-elevator accommodations render G.D.'s case insufficient as a matter of law.  There is no genuine dispute of material fact on an "essential element" that G.D. bears the burden of proving at trial.  *Celotex Corp.*, 477 U.S. at 322; *Anderson*, 477 U.S. at 247-48.

### IV.    CONCLUSION

Dr. Won Pat's Motion for Summary Judgment is well taken.  Mr. Taijeron's claims must be dismissed for lack of subject-matter jurisdiction because they are mooted by his May 2026 graduation from Southern High School.  As to G.D.'s claims, summary judgment in Dr. Won Pat's favor is appropriate because the record, as presented across both cross-motions, shows that Dr. Won Pat is entitled to judgment as a matter of law as to all of his claims.  Accordingly,

(1) Defendant's Motion for Summary Judgment (ECF No. 128) is GRANTED;

(2) Plaintiffs' Motion for Summary Judgment (ECF No. 126) is DENIED;

(3) Plaintiff Logan Taijeron is DISMISSED as a party plaintiff;

(4) The Clerk is directed to ENTER JUDGMENT in favor of Defendant Judith T. Won Pat, Ed.D., and against Plaintiff G.D., on all claims;

(5) All remaining outstanding motions are DENIED AS MOOT and all hearings are VACATED; and

(6) The Clerk is directed to CLOSE this case after entry of judgment.

IT IS SO ORDERED this 3rd day of June, 2026.

_____
RAMONA V. MANGLONA
District Judge